IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FREDERICK SCHRUBY, | : | |
|    *Plaintiff,* | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 19-CV-4206 |
| | : | |
| SIANNI, *et al.*, | : | |
|    *Defendants.* | : | |

## **MEMORANDUM**

**PAPPERT, J.**                                                                                                                         **JULY 13, 2020**

Pro se plaintiff Frederick Schruby filed this lawsuit pursuant to 42 U.S.C. § 1983 against individuals employed by or otherwise associated with the Bucks County Correctional Facility ("BCCF"). (ECF No. 2.) Before the Court had an opportunity to address Schruby's Complaint, he filed an Amended Complaint (ECF No. 7), which is now the governing pleading in this case.[1] For the following reasons, the Court will dismiss in part his Amended Complaint pursuant to 28 U.S.C. 1915(e)(2)(B)(ii), and grant him leave to file a further amended complaint.

---

[1] An amended complaint, once submitted to the Court, serves as the governing pleading in the case because an amended complaint supersedes the prior pleading. *See Shahid v. Borough of Darby*, 666 F. App'x 221, 223 n.2 (3d Cir. 2016) (per curiam) ("Shahid's amended complaint, however, superseded his initial complaint." (citing *W. Run Student Hous. Assocs. LLC v. Huntingdon Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013)); *see also Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity. Thus, the most recently filed amended complaint becomes the operative pleading.") (internal citations omitted). Accordingly, the Clerk of Court will be directed to terminate parties who were not named in the Amended Complaint – John Does eight through ten, Jane Doe Nurse Two, Clayton, South, Reed, Burris, Prime Care Medical, Inc., Fulton, and Pirolli.

I[2]

On September 11, 2019, Schruby filed a Complaint without paying the filing fees or filing a motion to proceed *in forma pauperis*. (ECF No. 1.) In accordance with this Court's September 24, 2019 Order, on October 2, 2019, Schruby filed a motion to proceed *in forma pauperis*, but did not include a prisoner account statement for the six-month period preceding the filing of his Complaint, allegedly because prison personnel would not provide that document. (ECF No. 4.) On October 30, 2019, again in response to a Court Order, Schruby filed an affidavit attesting to his inability to obtain a prison account statement. (ECF No. 6.) On December 23, 2019, Schruby filed an Amended Complaint. (ECF No. 7). On February 10, 2020, the Court granted Schruby leave to proceed *in forma pauperis* and deferred screening of his Amended Complaint. (ECF No. 10.)

According to the Amended Complaint, Schruby is a pretrial detainee currently incarcerated at BCCF and the facts giving rise to his claims are alleged to have occurred at that facility. (ECF No. 7 at 2.)[3] Schruby alleges that an inmate known as "Tweek" advised him that Defendant Sianni, a case manager at BCCF, divulged details from Schruby's criminal history to Tweek. (*Id.* at ¶¶ 6, 11-17.) Thereafter, Schruby requested a meeting with Sianni and submitted a written request that Sianni not share Schruby's criminal history further. (*Id.* at ¶ 18.) On May 29, 2019, Schruby met with Sianni and requested that his personal information be kept private, and also requested a grievance form. (*Id.* at ¶¶ 19-21.) Sianni became belligerent, refused to provide the

---

[2] The allegations set forth in this Memorandum are taken from Schruby's Amended Complaint.

[3] The Court adopts the pagination assigned by the CM/ECF docketing system.

grievance form, and ordered Schruby to return to his cell. (*Id.* at ¶¶ 23-24.) Schruby did so and, shortly thereafter, Defendant Wambold entered the cell and asked why Schruby was threatening Sianni – which Schruby denied. (*Id.* at ¶¶ 25, 27.) The next day, Defendant Balla demanded that Schruby leave his cell, whereupon Schruby was confronted by 6 additional John Doe Defendant correctional officers. Defendant Balla placed Schruby in a headlock and handcuffed him. Schruby was then knocked to the ground and punched and kneed by the John Doe Defendants. (*Id.* at ¶¶ 32-37.) One of the Defendants stepped on Schruby's left hand, injuring him. (*Id.* at ¶ 38.) Defendant Balla continued to choke and jerk Schruby, causing pain and limiting his air supply. (*Id.* at ¶ 40.) Schruby was taken to the RHU; on the way, he complained of pain in his left hand, whereupon one of the Defendant officers grabbed his left pinky finger and bent it back until it broke. (*Id.* at ¶¶ 44, 45.)

Schruby alleges he was placed in a RHU holding cage and initially denied medical care. (*Id.* at ¶¶ 47-49.) He was later escorted to the medical department, where Defendant Nurse Jane Doe refused to examine Schruby or treat his hand or the bruises on his body. (*Id.* at ¶¶ 50-53.) Schruby was escorted back to the RHU without treatment. (*Id.* at ¶ 54.) Later, Defendants Brown and Knapp removed Schruby from the RHU, indicating that he was going to the medical department. (*Id.* at ¶ 56.) Instead, the Defendants took Schruby to a bathroom and forced him to submit to a strip search. (*Id.* at ¶¶ 57-64.) Thereafter, Defendant Long returned Schruby to the RHU, where he forced Schruby to strip and undergo an intrusive body search. (*Id.* at ¶¶ 66-68.)

Shruby was served with disciplinary charges for interfering with staff, disobeying a direct order, creating a disturbance, refusing to provide a urine sample and making threats. (*Id.* at ¶ 70.) On June 3, 2019, a hearing was held on the charges. (*Id.* at ¶ 71.) Schruby requested that hearing examiner Defendant Dittman call a witness to the May 30, 2019 incident, but this request was denied. (*Id.* at ¶¶ 72, 74.) Schruby argued that the charges were false and were the result of retaliation, but he was found guilty and sentenced to 40 days in the RHU. (*Id.* at ¶ 75.) He unsuccessfully appealed the decision. (*Id.* at ¶ 76.) On June 3, 2019, Schruby submitted a written request for grievance forms so that he could file a grievance against Defendant Sianni; the request also complained about the strip searches conducted by Defendants Brown, Knapp and Long. (*Id.* at ¶¶ 80, 81.) Schruby was never provided with grievance forms. (*Id.* at ¶ 82.) Schruby also contacted Defendant Warden Lagana and told him he was being retaliated against and requested medical care; Lagana did not immediately respond. (*Id.* at ¶¶ 83, 84.) Later, Lagana visited Schruby's cell and Schruby told him he was being retaliated against for trying to file a grievance; Lagana made no attempt to investigate Schruby's claims. (*Id.* at ¶¶ 85-87.)

Schruby claims that Defendants Balla, John Does Nos. 1 through 6, and defendant Crouthmel (who is alleged to have been present during the May 30, 2019 incident) used excessive force in violation of Schruby's 14th Amendment rights; that Defendant Nurse Jane Doe was deliberately indifferent to Schruby's serious medical needs, in violation of his 8th Amendment rights; that Defendant Dittman conducted a hearing and found Schruby guilty in violation of Schruby's 14th Amendment due process rights; that Defendant Sianni's conduct constituted retaliation for Schruby's efforts to

4

file a grievance against him; that Defendants Brown, Knapp, and Long strip searched him in violation of the 4th Amendment's prohibition on unreasonable searches; and that Defendant Lagana's failure to curb the conduct of the named Defendants constitutes a violation of Schruby's 1st Amendment rights. (*Id.* at ¶¶ 89-94.) Defendant Lagana is sued in his official and individual capacities; the remaining Defendants are sued in their individual capacities. Schruby requests a declaratory judgment that each of the above-named Defendants engaged in the described conduct in violation of Schruby's rights; expungement of his disciplinary record; and an award of compensatory and punitive damages against each of the named Defendants. (*Id.* at pages 14-16.)

II

Because Schruby is proceeding *in forma pauperis* (ECF No. 10), 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Schruby is proceeding *pro se*, the Court must construe his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

III

Schruby purports to state a claim for violations of his civil rights pursuant to 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a

right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

A

Schruby brings this action against Defendant Lagana in both his individual and his official capacities. (ECF No. 7.) He seeks both a declaratory judgment against him, and recovery of compensatory and punitive damages. To the extent Schruby seeks to bring claims against Warden Lagana in his individual capacity as warden of BCCF, "[a] claim of a constitutional deprivation cannot merely be premised on the fact that the named defendant was a prison supervisor when the incidents set forth in the complaint occurred." *Quarles v. Palakovich*, 736 F.Supp.2d 941, 949 (M.D. Pa. 2010). Rather, there are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*

6

Here, there is no allegation that Lagana established or maintained a policy, practice or custom that resulted in the constitutional harm alleged by Schruby. To the contrary, Schruby alleges in his Amended Complaint that some of the conduct described was in violation of prison policy. As to the second basis for liability, Schruby does not allege that Lagana participated in the violation of his rights, directed others to violate them, or that he was aware of the constitutionally violative conduct until Schruby himself advised him of it. Schruby does allege that he submitted a written request to Lagana to advise him that he, Schruby, believed he was being retaliated against and requesting medical care, and Lagana never responded. (ECF No. 7 at ¶¶ 83, 84.) He also describes an in-person meeting with Lagana in his cell, during which Schruby advised Lagana that he had been retaliated against for attempting to file a grievance. Schruby alleges that Lagana "turned a blind eye to the assault and made no attempt to investigate the conduct of his officers." (*Id.* at ¶¶ 85-87.)

"[A]n allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim." *Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) (quotations omitted); *see also Boseski v. N. Arlington Municipality*, 621 F. App'x 131, 135 (3d Cir. 2015) (per curiam) ("Boseski has no cognizable claim against a government entity for its failure to investigate or bring criminal charges against another individual."). Furthermore, "[m]erely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege [a] . . . deliberate indifference claim." *Tenon v. Dreibelbis*, 606 F. App'x 681, 688 (3d Cir. 2015) (per curiam); *Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (per curiam) ("The District Court properly determined that Defendants

7

Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue]."); *Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (per curiam) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews.")  Schruby's claims against Lagana in his individual capacity are not sufficient to survive screening and will be dismissed without prejudice.

      As to the claims against Lagana in his official capacity, claims against municipal officials named in their official capacity are indistinguishable from claims against the municipality.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id.*  To plead a basis for municipal liability, under § 1983, a plaintiff must allege that the municipality's policy or custom caused the alleged constitutional violation.  *See Monell,* 436 U.S. at 694.  "To satisfy the pleading standard, [the plaintiff ] must . . . specify what exactly that custom or policy was." *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009).  As Schruby has not alleged a municipal policy or custom that caused the claimed constitutional violations, his official capacity claim against Lagana is not plausible and will be dismissed without prejudice.

B

In his Amended Complaint, Schruby names Crouthmel as a Defendant, and claims that he engaged in excessive force against Schruby, but the only factual allegation as to Crouthmel is that he was present during the May 30, 2019 incident; he is not alleged to have participated in the other Defendants' violative conduct. Nor are there sufficient factual allegations from which the Court could plausibly infer that Crouthmel was in a position to intervene. In a §1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998). Because Schruby does not describe how Defendant Crouthmel was personally involved in the alleged violation of Schruby's constitutional rights, the claims against him are not sufficient to survive screening and will be dismissed without prejudice.

C

Schruby brings excessive force claims against defendants Balla, John Does one through six, and Crouthmel based on the incident that occurred on May 30, 2019, during which Schruby alleges he was removed from his cell, handcuffed, punched, kneed, choked, and had his hand stepped on and his finger broken. The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992). When screening an Eighth Amendment excessive force claim under § 1915, the Court asks whether the prisoner has alleged plausibly that the

force was applied "maliciously and sadistically to cause harm" rather than "in a good-faith effort to maintain or restore discipline." *Jackson v. Bueno,* Civ. A. No. 20-0687, 2020 WL 2847925, at *3 (E.D. Pa. June 2, 2020) (quoting *Hudson*, 503 U.S. at 7). The factors used to determine whether the force applied was excessive include: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). Although the extent of an inmate's injuries is relevant to an Eighth Amendment analysis, "there is no fixed minimum quantum of injury that a prisoner must prove that he suffered through objective or independent evidence in order to state a claim for wanton and excessive force." *Id.* at 104. Thus, the inquiry must be driven by the extent of the force and the circumstances in which it is applied, not by the resulting injuries. *Id.* at 108; *see also Smith v. Mensinger*, 293 F.3d 641, 648 (3d Cir. 2002). The Eighth Amendment does not protect against a de minimis use of physical force, so long as it is not of a sort "repugnant to the conscience of mankind." *Brooks*, 204 F.3d at 107 (quoting *Hudson*, 503 U.S. at 9-10).

Here, as alleged, the incident was instigated by the corrections officers at the behest of defendant Sianni in retaliation for Schruby's attempt to file a grievance against Sianni. There was no security threat posed by Schruby, who was ordered to leave his cell before the incident began. Throughout the incident, he was allegedly handcuffed and not in a position to resist. As alleged, there was no effort on the part of

the officers involved to temper the force used; to the contrary, it is specifically alleged that no Defendants intervened or attempted to stop the behavior. Indeed, one of the Defendants is alleged to have encouraged the others to "fuck [Schruby] up." An officer is alleged to have stepped on Schruby's hand, injuring him, and when he complained of the pain, an officer is alleged to have grabbed his pinky and bent it backwards until it broke. Schruby alleges that he suffered bruises all over his body and a broken finger as a result of the officers' conduct. (ECF No. 7 at ¶¶ 32-45.)

Schruby will be permitted to proceed with his excessive force claim at this time. Although he cannot identify six of the officers involved in the incident – they are identified as John Does one through six in the Amended Complaint - he may be able to learn their identities and discern which officer inflicted which injury through the discovery process. *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293 (3d Cir. 2018).

D

Schruby asserts a deliberate indifference claim against Defendant Nurse Jane Doe, based on her alleged refusal to examine him or provide any care for his injuries following the May 30, 2019 incident in which he was allegedly beaten and injured. To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[4] *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A

---

[4] As it appears that Schruby was a pretrial detainee at the time of the events in question, the Fourteenth Amendment governs his claims. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). However, the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis. *See Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (per curiam); *see also Moore v. Luffey*, No. 18-1716, 2019 WL 1766047, at *3 n.2 (3d Cir. Apr. 19, 2019) (declining to address whether a new standard applies to claims raised by pretrial detainees based on issues related to medical care).

prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

However, "that some treatment has been provided does not automatically defeat an Eighth Amendment deliberate indifference claim." *Shifflett v. Korszniak*, 934 F.3d 356, 367 (3d Cir. 2019). "Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, . . . though the reason for the delay and the nature of the

medical need is relevant in determining what type of delay is constitutionally intolerable." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).

Here, Schruby alleges that he was taken to the medical department after he was allegedly injured in the course of a beating, during which his hand was stepped on, and after, when his finger was pulled back until it broke. (ECF No. 7 at 32-45.) He further alleges that defendant Nurse Jane Doe refused to provide treatment to him while he was in the medical department, and that he was forced to return to his RHU cell in pain. (*Id.* at ¶¶ 52, 54, 55.) He alleges that as a result of the lack of treatment, his pinky is permanently deformed. (*Id.* at ¶ 55.)

Schruby has alleged a plausible basis for a claim against Nurse Jane Doe sufficient to survive § 1915 screening.

### E

Schruby alleges that the Defendants engaged in the entirety of the conduct alleged in the Amended Complaint in an effort to retaliate against Schruby for attempting to file a grievance against Defendant Sianni after Sianni divulged details of Schruby's criminal history to a fellow inmate. "To state a claim for retaliation, a prisoner must allege that: (1) he was engaged in a constitutionally protected conduct, (2) 'he suffered some adverse action at the hands of prison officials,' and (3) 'his constitutionally protected conduct was a substantial or motivating factor in the decision' to take that action." *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)) (internal quotations omitted).

With respect to the first requirement, Schruby has sufficiently alleged that he was attempting to engage in constitutionally protected conduct when he sought to file a grievance against Sianni for allegedly violating prison policy when he divulged information about Schruby's criminal history to a fellow inmate.  The "filing of grievances [is] an activity protected by the First Amendment."  *Collazo v. Rozum*, 64 F. App's 274, 276 (3d Cir. 2016) (citing *Fantone v. Latini*, 780 F.3d 184, 192 n.8 (3d Cir. 2015)); *see also Robinson v. Taylor*, 204 F. App'x 15, 157 (3d Cir. 2006) (holding that an inmate's "filing of a grievance to complain about [corrections officer's] behavior is constitutionally protected conduct, and the District Court erred in ruling otherwise.")

With respect to the second requirement, a prisoner must allege "an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights[.]"  *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003) (internal quotations omitted).  Here, Schruby alleges that he was handcuffed, punched, kneed, stepped on, transferred to the RHU, denied medical care, falsely charged with disciplinary violations, subjected to a hearing that resulted in a deprivation of his due process rights, and punished for disciplinary violations he did not commit.  Construed liberally at this screening stage of the litigation, this is sufficient to satisfy the adverse action requirement.

With regard to the third requirement, Schruby has also adequately alleged a plausible claim that his attempt to file a grievance against Defendant Sianni was a substantial or motivating factor behind the conduct that followed.  Specifically, he alleges that, after he requested and was denied a grievance form by Sianni, he returned to his cell, where he was visited by Defendant Wambold.  Defendant Wambold asked

14

Schruby what his problem was, why he was threatening Sianni, and told him, "when I come back here you're out of here." (ECF No. 7 at ¶¶ 2-29.) The next day, he was told by Tweek that he "shouldn't have messed with Sianni." (*Id.* at 30.) Shortly thereafter, the alleged beating occurred. At this screening stage, Schruby has stated a plausible claim for retaliation, and the Court will allow this claim to proceed.

F

Schruby asserts a 4th Amendment claim based upon the strip-searches to which he was allegedly subjected by Defendants Brown, Knapp, and Long. "[C]orrectional officers must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities," *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 328 (2012). Accordingly, the Supreme Court has held that jail officials may, consistent with the Constitution, strip-search pretrial detainees before admitting them into the jail's population. *Id.* at 339. The Third Circuit, in an unpublished opinion, has concluded that in the context of an emergency circumstance such as a prison lockdown, it is not unreasonable for jail officials to conduct strip-searches in groups, even if members of the opposite gender are present. *See Small v. Wetzel*, 528 F. App'x 202 (3d Cir. 2013).

According to the Amended Complaint, Defendants Brown and Knapp arrived at Schruby's RHU holding cell to escort him to the medical unit. (ECF No. 7 at ¶ 56.) Instead, they escorted him to a bathroom, forced him to strip, bend over and spread his buttocks. (*Id.* at ¶¶ 57-61.) The Defendants allegedly forced Schruby to do this several times, and giggled during the incident. (*Id.* at ¶¶ 63-64.) Schruby was not escorted to the medical unit after this incident, but was returned to his RHU cell by Defendant

15

Long. (*Id.* at ¶ 66.) There, Defendant Long again allegedly forced Schruby to strip and subjected him to a further cavity search. (*Id.* at ¶¶ 67-69.) Schruby alleges that he was subjected to the serial instrusive searches though he was never outside of the supervisory custody of correctional officers, and that no contraband – the purported reason for the searches – was ever found. These allegations are sufficient to state a plausible claim at this screening stage and Schruby will be permitted to proceed with this claim.

G

Schruby asserts a due process claim against Defendant Dittman based on the conduct of his disciplinary hearing. "Due process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly falsified evidence and groundless misconduct reports." *Smith v. Mensinger*, 293 F.3d 641, 653-54 (3d Cir. 2002). "'In the context of disciplinary proceedings, a pretrial detainee is entitled to: (1) written notice of the misconduct charge at least twenty-four hours before the disciplinary hearing; (2) a written statement by the factfinder as to the evidence relied on and the reasons for the disciplinary action; and (3) a limited right to call witnesses and present documentary evidence in his defense when it would not be unduly hazardous to institutional safety or correctional goals to allow the inmate to do so.'" *Kanu v. Lindsey*, 2016 WL 1086565, at *5 (E.D. Pa. Mar. 21, 2016) (quoting *McDowell v. Deparlos*, 2016 WL423778, at *24-26 (M.D. Pa. Jan. 7, 2016)).

According to the Amended Complaint, after the alleged assault and strip searches, Schruby was served with disciplinary charges including interfering with staff, disobeying a direct order, creating a disturbance, refusal to provide a urine sample and

16

threats. (ECF No. 7 at ¶ 70.) Schruby's disciplinary hearing was held on June 3, 2019. Scrhuby alleges that he asked that a particular witness be called, but his request was denied. Schruby was found guilty and sentenced to forty (40) days in the RHU. He appealed, but the result was upheld. He alleges that, as a result of the false charge and finding against him, he lost his liberty, his prison employment and was denied time in the prison yard and access to the commissary. (*Id.* at ¶¶ 74-77.). Based on the foregoing, Schruby appears to have been afforded notice of the charges against him, the opportunity, albeit limited, to defend himself, and an opportunity to appeal the adverse decision. In these circumstances, he has not stated a plausible claim and his due process claim will be dismissed with prejudice.

IV

For the foregoing reasons, the Court will dismiss with prejudice Schruby's procedural due process claim based on the handling of his disciplinary hearing pursuant to 28 U.S.C. § 1915(e)(2(B)(ii) for failure to state a claim. The Court will dismiss without prejudice Schruby's claim against Defendants Lagana and Crouthmel. Schruby will be permitted to file a further amended complaint to attempt to cure the defects noted above. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). He will be permitted to proceed with the remainder of his claims. An appropriate Order follows.

**BY THE COURT:**

*/s/ Gerald J. Pappert*
**GERALD J. PAPPERT, J.**